JOHN A. BEEBER, Receiver of the Lycoming Fire Insurance Co., *v.* EPHRIAM T. WALTON, FRANCIS N. BUCK and CHAS. RICHARDSON, doing business as Walton, Whann & Co.

*Foreign Insurance Company — Foreign Record — Evidence — Books of Plaintiff — Pleadings — Leave to Amend — Certificate of Insurance Commissioner.*

A copy of the record from the recorder of deeds in a county in another State showing the change of name of plaintiff, said change having been made by the Court of Common Pleas of said County and ordered by said Court to be recorded in said recorder's office and this being the only record of said proceedings under the law of said State, being properly certified, is admissible in evidence.

Plaintiff's book in which the minutes of its proceedings are kept and also containing a copy of its by-laws which were adopted on the report of a committee of the directors, admitted in evidence, though objected to as not being the original report of said committee.

The certificate of the Insurance Commissioner showing the plaintiff's right to do business in this State was not admitted in evidence, there being no allegation or averment in the declaration that the corporation had lawful authority to do business in this State.

Leave to amend pleadings granted during the course of the trial.

The certificate of the Insurance Commissioner cannot legalize insurance transactions entered into prior to the date of said certificate, said transactions being contrary

to the provisions of the law prohibiting any such insurance unless previously authorized by the said certificate of the Insurance Commissioner properly obtained.    The plaintiff cannot recover upon premium notes taken prior to the issuance of said certificate of the Insurance Commissioner authorizing the plaintiff to do business in this State.

*(Kent, April, 1887.)*

NARR IN ASSUMPSIT on premium note of defendants to the Company.

Pleas, 1, non-assumpsit ; 2, payment ; 3, release ; 4, accord and satisfaction ; 5, discount ; 6, set off ; 7, statute of limitation; 8, That prior to the making of the said assessments on the said premium note &c., &c., the defendants had duly surrendered to the said company their policy of insurance which was duly accepted by it, and thereupon the defendants ceased to be members of the said corporation plaintiff, &c ; 9, That the said premium note was obtained and procured by the said company from the defendants by means of the fraud, misrepresentation and covin of the said company &c.; 10, That the defendants were induced to become, and did become members of the said corporation plaintiff, and to make and deliver the said premium note to the said plaintiff by means of the fraud, misrepresentation and covin of the said plaintiff, &c.

*Fulton* and *McCormic* and *Beeber* for plaintiff.

*Neilds* and *Hayes* and *Massey* and *Ridgley* for defendants.

*Fulton* offers the charter of the company in evidence.

*Massey* objects to the admissibility of it, because the printed pamphlet offered while it purports to contain copies of the Acts of Assembly in Pennsylvania concerning the corporation, which appear to be properly authenticated, but it also contains what purports to be a copy of certain judicial proceedings in the Court of Common Pleas of Lycoming County in that State to which this corporation was a party which is not authenticated correctly in conformity with the Act of Congress.

*McCormic* then offered in addition to the foregoing a copy of the record of the judicial proceeding mentioned, duly certified as such in conformity with the Act of Congress as he alleged.

*Massey* further objected that it appeared that the copy of the record just offered was made out and subscribed by the Recorder of Deeds of Lycoming County, Pa., and not by the Prothonotary or clerk of the said Court of Common Pleas of said county, which was therefore not in conformity with the Act of Congress, which requires that it should have been certified under the hand of the Prothonotary and under the seal of that court. It is only by the Act of Congress that this instrument as a copy merely of an original record or of any other instrument of writing can be produced in evidence here in this or in any other case, and the modes prescribed by it must be strictly followed. 95 U. S., 422; 5 Harr., 107.

*McCormic.* There is no other record of the proceeding had under the Act of Pa. in the Court of Common Pleas of Lycoming County to change the name of the corporation plaintiff, than that which has here been offered, and which is accordingly the sole original record of the proceeding for that purpose in that court, and which is under the law of that State directed by the court to be entered or recorded in the office of the Recorder of Deeds in that county. Rev. Code, Sec. 14, p. 762.

*Nields.* There is an affidavit filed in this case by the defendants denying the existence of this corporation.

THE COURT overruled the objection and admitted the certified copy of the proceeding offered by the change in the name of the corporation plaintiff. The counsel for the defendants excepted to the ruling, &c.

James M. Bowman testified : Was secretary of the corporation in June, 1872, to June, 1873, and this is the minute book of the company during that time, and is in the hand of the President of it, and was made by him on the 17th of June, 1872, and are minutes of a meeting of it held on that day. It is a copy of the by-laws of it adopted on the report of a committee of the directors on that day. Was secretary of it until 1881.

The minutes offered in evidence by counsel for the plaintiff. Objected to on the other side because the minutes were not the original report of the by-laws reported by the committee of the

directors on that day, and are not admissible without proof of the loss of the original.

THE COURT overruled the objection and admitted the evidence.

John R. McFee, Esq., sworn, after which the counsel for the plaintiff produced and offered in evidence the certificate of the Insurance Commissioner of this State that the corporation plaintiffs was duly and lawfully authorized to do and carry on business in this State.

*Massey* objected to the admissibility of it in evidence, because there is no allegation or averment in the declaration that the corporation had lawful authority to do business in this State, and as it is material to the right of action, not having been alleged, it cannot be proved. *Gould's Pl.,* 174, 175; 1 Ch. Pl., 320. Our statute requires that as corporation of another State it should have such a certificate as is offered in evidence to lawfully do business, and, of course, to make such a contract as this, in this State. 8 Wall., 181; 1 Ch. Pl., 322, 323, 236; 6 T. R., 710; 55 Vt., 522, 532. The other ground of objection is founded on the provisions contained in the act of this State, *Del. Laws,* Vol. 16, Sec. 5, 29; 3 Harr., 456.

*McCormic.* The general averment that the company was lawfully engaged in the insurance business was sufficient to admit the evidence, and if not, it should have been demurred to, and not traversed by the plea of the general issue; the averment had reference both to the time and the venue (this county) alleged in the declaration.

*Nields.* We could not have demurred to the declaration on that ground for the action on this contract was transitory, and *non constat* that it might have been, and was made between the parties to it in Pa.

*Fulton.* The case cited from 55 Vt., reports, I take occasion to say, after having made the most thorough search of my life, is the only one to be found to the same effect anywhere, but it

was on demurrer, and not on an objection to evidence on the trial of the case before the court and jury. He cited 53 Pa., 353; 8 Kans., 9; 18 Wis., 235; 13 Pet., 536; 1 Harr., 216.

THE COURT, after adverting to the averments in the narr and the statute referred to, sustained the objection and ruled out the evidence offered.

*McCormic* then asked leave of the court to now amend the declaration by inserting in it the necessary averments.

*Massey* objected and read the 14th section of the statute of amendments, and contended it was the only provision in the statute under which the application to amend the declaration can be granted during the trial of the case before the jury. He next referred to the provisions of the 11th section of the same statute. 4 Houst., 100; 5 Harr., 381; 4 Harr., 204; 3 Ibd., 75; 4 Houst., 548.

*Ridgley,* on the same side.

*Fulton.* The statute of amendments are to be liberally construed. Refers to and reads the provisions of the State Constitution on the subject, and insists that in accordance with the language and spirit of it, the Court ought to allow the amendment now asked for.

*McCormic,* 2 *Black. Com.* 407. Reads the 11th Sec. of Statute of Amendments, and contends that the language of it is so broad and comprehensive and general that it cannot be limited or restricted, and was not intended to be by the 14th section of it, and it does not appear that it has ever been so ruled by any court in this State.

*Nields* replied.

*The Court* overruled the objection and granted the motion for leave to amend the declaration.

*McCormic* then offered and read in evidence the certificate of In-

surance Commissioner of this State authorizing the incorporation plaintiff to do business in this State.

Also the three several applications of the defendants for insur-ance and their three several premium notes to the company, the signatures of the firm to the same and of the signature of the agent of the company to the said applications being mutually assented to by counsel on both sides for the purpose only of dispensing with the production of the formal proof of the genuineness of the said signatures respectively.

*Massey* objected to the admissibility of them on the ground that it appeared on the face of them from their dates respectively that they antedate the certificate of the Insurance Commissioner of this State to the company just before produced in evidence, and subsequent to the passage of the statute prohibiting foreign insurance companies from doing business in it without such a certificate. 16 Del. Laws, 29 ; 55 Ill. 86, 89 ; 80 Pa., 15, 28, *Cook & Pierce Case* ; 2 Houst ; 3 Gray, 215, 222 ; 3 Gray, 500 ; 55 Ver., 533 ; 11 Wis., 394, 397, 398 ; 12 How., 79 ; 5 Barn & Ald., 335 ; 13 Pet. 589 ; 8 Wall. 181.

There is nothing in the statute to give any retroactive operation or effect to the certificate of the insurance commissioner to be issued under it to any foreign insurance company.

*McCormic* in reply cited 109 U. S. 527 ; 62 Md. 204. Refers to our statute, 16 Del. Laws, 29, Sec. 2. No case has been cited in which such a company had failed to recover in such a case as this in which it had obtained such a certificate as this, and it so appeared in the report of the case. In the case before this court the certificate of the commissioner is in terms broad enough to cover the whole period from the time the statute went into effect (July 1, 1879) to the 30th of Jan., 1880. 60 N. H., 464 ; 70 Ind., 1.

*Fulton.* The certificate of the Commissioner of Insurance, who is a public functionary in the administration of the powers and duties of the office, is final and conclusive on every one, and cannot be contradicted or disputed here ; and that it is retroactive as well as prospective, and by its terms covered the whole period from

the 1st of July, 1879 to the 31st day of January, 1880.  Court adjourned until Monday next at 11 o'clock a. m.

*Ignatius C. Grubb, J.:*  The corporation plaintiff has offered to put in evidence three several applications made by the defendants to the plaintiff for insurance, and also three several premium notes given by defendants to the plaintiff for three several policies of insurance on property of defendants situated within this State, given by the plaintiff when, as the plaintiff alleges in narr as amended at the trial of this cause, the said plaintiff was lawfully authorized to transact insurance business within the limits of the State of Delaware.  The defendants have objected to the admission of said applications and notes as evidence in this cause on the grounds that these show on their face that the insurance business to which they relate was transacted during a time when, in fact, said plaintiff was not lawfully authorized to transact any insurance business within this State, and therefore that said applications and notes, if so admitted, would be evidence, not of a lawful, but of an unlawful insurance transaction within this State.  The certificate issued by the insurance commissioner of this State to the plaintiff, already put in evidence, bears date November 28, 1879 ; and among other things shows its agents in Delaware to be L. P. Buck & Co., residing at Wilmington, in this State.  The said applications and notes on their face show that they were made prior to the date of said insurance certificate, and at Wilmington, Delaware, and that the defendants as well as the plaintiff's said agent, through whom the entire insurance transaction appears to have been effected, all resided at that time in Delaware; while the notes import that they were given in consideration of the receipt of the said policies on the property in Delaware described in said applications.

The objection made by defendants to the admissibility of the applications and notes in question raises two inquiries :

First, Was the plaintiff at the time of the said transaction lawfully authorized to transact said insurance business within the State of Delaware ?

Second, If not so authorized can the plaintiff recover in this action on the said premium notes any of the assessments sought to be recovered in this suit?

In the determination of the first inquiry it is unnecessary to consider whether or not the said plaintiff, being a corporation created exclusively under the laws of the State of Pennsylvania, could have lawfully transacted the said insurance business within this State, in case no statute of this State had been then in force forbidding its enjoyment of our comity for that purpose, unless it had first obtained authority therefor agreeably to the provisions of such statute. For in fact such a statute was then in force, having been passed March 24, 1879, and which expressly provided that its provisions in that behalf should go into effect and operation on July 1, 1879. Unless, therefore, the plaintiff is able to show that it had duly complied with the provisions of said statute it could not lawfully have transacted the said insurance business within this State. The principal object of this statute was to protect the citizens of this State who might seek to become holders of insurance policies against the fraudulent devices of spurious and insolvent companies. It therefore provided that there should be an insurance department to be administered by a State Insurance Commissioner, charged and clothed with all the duties and powers essential to the due fulfilment of the object of the statute. Among other things the said statute provided that every insurance company doing the business of insurance within this State should on or before the first day of July, 1879, and annually thereafter, on or before the first day of February, deliver to the insurance commissioner a full detailed statement of the condition and business of such company for the year ending on the previous thirty-first day of December, which statement should be verified by oath or affirmation and set forth the particular matters prescribed by the act. It further provided that every insurance company not incorporated under the laws of this State shall, before doing any insurance business within this State, deliver to the insurance commissioner a certified copy of its charter or declaration of organization, and also a certificate of the name and residence of some person or agent within this State upon whom service of process against such company may be made. And it also provided that if it shall appear by such statement and report or reports that such company is incorporated under the laws of any other State or foreign government, and is in good condition, and has assets to the amount of $150,000 over all liabilities and

claims, then the insurance commissioner shall issue a certificate authorizing said company to transact the business of insurance, and establish agencies in this State. The statute also expressly provides that "no insurance company or corporation shall be engaged in, prosecute, or transact any insurance business within the limits of this State without having first obtained authority therefor agreeable to the provisions of this Act;" and the Act further declares that every violation of this provision shall be a misdemeanor punishable by fine and imprisonment. It also prescribes that "all certificates and other official papers shall be accompanied with an impression of the insurance commissioner's seal of office," and further that "any instrument lawfully executed by the insurance commissioner of this State, and authenticated by his seal of office, shall be received in evidence in the courts of this State, and copies of papers and records in his office so authenticated, shall be received as evidence with the same effect as the originals." The said certificate issued by the said insurance commissioner, to the corporation plaintiff, bearing date November 28, 1879, on its face authorizes the plaintiff to transact the business of insurance and establish agencies in this State for and during the year ending January 31, 1880, and recites that the plaintiff had filed the detailed statement prescribed by the statute, containing the particulars therein required, together with a certified copy of its charter and the prescribed certificate of the name and residence of his agent within this State upon whom service of process may be made. The plaintiff therefore contends, in view of the foregoing provisions of the said act, and in accordance with the plaintiff's interpretation of the meaning and intent of the statute that the said certificate on its face implies, and warrants the presumption first, that the plaintiff's said statement was delivered to the said insurance commissioner on or before July 1, 1879, and prior to the transaction of any of the insurance business, in consideration of which said premium notes were given; and second, that by reason of such alleged delivery on or before said July 1, 1879, the said plaintiff was authorized to transact the business of insurance in this State from said date until January 31, 1880.

In the opinion of the Court this view is untenable. In the first place it assumes as fact what has not been established by any

evidence as yet presented in this cause, viz : That the plaintiff was actually doing the business of insurance within this State before or on July 1, 1879.   Until this be first proven it cannot be presumed from anything now actually found in said insurance certificate that said statement was delivered to said insurance commissioner on or before said date.   On the contrary it must be presumed that it was delivered to said commissioner on or about November 28, 1879, the day of the date of said certificate.   For it is unreasonable to suppose or presume that said public officer would have disregarded his duty by delaying nearly five months to examine and determine the sufficiency of a statement when such duty might reasonably be discharged in less than that number of days.   In the second place we find nothing in the statute to warrant the view that when the prescribed certificate is issued, the authority thereby conferred to transact insurance business relates back to the delivery of the said statement to the commissioner and legalizes all insurance transactions which may have occurred, despite the express prohibition of the statute, between the day of such delivery and the day of issuing such certificate.   On the contrary, according to the corrct interpretation of the statute, the said authority is not granted, nor is it either begun or obtained until the commissioner has examined and found sufficient the statement prescribed by the act, and thereupon issued the necessary certificate; and until the commissioner also has received the certified copy of the charter and the certificate of the name and residence of the agent, as required by the statute. Any other construction would lead to uncertainty and confusion in the administration of the law, and afford easy opportunity for the commission of the dishonest and fraudulent practices which the statute was designed to prevent.   We are therefore of the opinion that the plaintiff, at the time of the aforesaid transaction, comprising the making of the said applications and notes now offered for admission, as part of the plaintiff's evidence in this cause, was not authorized to transact said insurance business in this State.   We are further of the opinion that, not being so authorized, the plaintiff cannot recover in this action, on the said premium notes any of the assessments sought to be recovered in this suit.   The plaintiff was, as has been shown, expressly prohibited by said statute from engaging in, prosecuting or transacting any insurance business

within the limits of this State without having first obtained authority therefor agreeably to the provisions of said act. Having transacted the insurance business in clear violation of the prohibitory provisions of the said statute, the contract made in reference thereto is illegal and void, and consequently no action can be maintained upon said contract, or upon the said premium notes. And this is so notwithstanding the statute did not declare that a contract made contrary to the provisions of it should be void. " For," to quote the language of this Court in the case of *Cook v. Pierce,* 2 Houston, 503, "a contract prohibited and made unlawful by statute is a void contract, although the statute does not expressly provide that it should be so." This principle, as enunciated in that case, has never been questioned by any subsequent adjudication in this State, while it has been recognized and affirmed by high authority elsewhere. We therefore feel constrained to adhere to it in this case, and to announce that, in our judgment, the said insurance applications and premium notes are not now admissible for the purpose of showing that the said notes were given by the defendants as a consideration for the lawful insurance by the corporation plaintiff of their said property situated in the State of Delaware. If this ruling shall prove fatal to the maintenance of the plaintiff's present action in this Court, it is, nevertheless, unavoidable. For, whether the plaintiff's violation of the plain letter of our statute has been occasioned by ignorance or willful transgression, it is in either case culpable. Our insurance act was a matter of public knowledge and general interest long prior to July 1, 1879, and was similar to those which had long been in operation in other states, and, therefore, the plaintiff and its agents should have taken notice of its existence, which could readily have been ascertained by the most ordinary diligence. The Court cannot sanction the plaintiff's interpretation of this act and hold that a foreign insurance corporation can transact insurance business in this State before it obtains the requisite authority, when the statute itself expressly forbids this, and then by subsequently obtaining the commissioner's certificate, render that lawful which the act had already made unlawful The obtaining the certificate showing a proper compliance with the statutory requirements is a condition precedent to the lawful transaction of any insurance business in this State, and our Courts must

of necessity hold that all premium notes given for such unlawful insurance cannot be enforced by the judicial tribunals of Delaware. Such is manifestly the intent and meaning of the statute, otherwise such foreign corporations as might escape its other penalties would be furnished the opportunity for first defrauding our citizens, and then in many cases evading our jurisdiction and escaping with impunity. Any other construction of our statute would tend to defeat the very object for which it was enacted, and leave our citizens unprotected against the fraudulent devices of those who might then with virtual impunity seek to make this State a convenient resort for the prosecution of dishonest insurance transactions.

                                   Plaintiff took a non-suit.